**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★  **NOV 0 5 2019**  ★

BROOKLYN OFFICE

NR:FTB/VTN
F. #2019R00138

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

AKMAL NARZIKULOV,
███████████████

SHERZOD MUKUMOV and
JASUR KAMOLOV,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 19-223 (S-1) (ILG)
(T. 18, U.S.C., §§ 922(g)(1), 924(a)(2),
924(d)(1), 981(a)(1)(C), 982(a)(2)(B),
982(b)(1), 1028(b)(2)(A), 1028(b)(5),
1028(f), 1201(a)(1), 1201(c), 1951(a), 2
and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Superseding Indictment, unless otherwise

indicated:

I.    The Process for Obtaining Commercial Driver's Licenses from the New York State
    <u>Department of Motor Vehicles</u>

        1.    The law of the State of New York required that drivers of certain types

of commercial vehicles, such as large buses, trucks and trailers, possess a commercial

driver's license ("CDL").   The New York State Department of Motor Vehicles (the "DMV")

issued CDLs in the State of New York, in accordance with regulations issued by the United

States Department of Transportation.   Holders of CDLs issued by the DMV were authorized

to drive such commercial vehicles in interstate and foreign commerce.

2.     Applicants seeking a CDL from the DMV were required to, among other things, pass a test (the "CDL Test") covering various subjects related to safely driving large vehicles.   The CDL Test was in a multiple-choice format and was taken at a computer terminal with a monitor that displayed the questions.   The sequence of the multiple-choice questions on the CDL Test was randomized by the DMV's testing software.

3.     Applicants seeking a CDL from the DMV were also required to complete an application form.   Above the space on the application form where the applicant was required to sign his or her name was a warning that making a false statement in connection with the application was a crime.

4.     Once an applicant passed the CDL Test, the applicant became eligible to take the CDL road test (the "CDL Road Test").   Upon successfully passing the CDL Road Test and waiting at least one business day, the applicant was able to visit a DMV office and obtain a temporary CDL, which was valid for 90 days.   Approximately three or four weeks after the issuance of a temporary CDL, the DMV mailed the applicant a permanent CDL bearing the applicant's photograph.

II.     The Scheme to Defraud

5.     In or about and between November 2018 and April 18, 2019, the defendants AKMAL NARZIKULOV, ████████████████ SHERZOD MUKUMOV and JASUR KAMOLOV engaged in a scheme to help individuals (the "Fraudulent Applicants") cheat on CDL Tests given at DMV offices located in Brooklyn, New York and elsewhere.

6.     In exchange for money, the defendants AKMAL NARZIKULOV, ████████████████, SHERZOD MUKUMOV and JASUR KAMOLOV met

Fraudulent Applicants at various DMV offices, including one located at 2875 West Eighth Street in Brooklyn, New York, and provided the Fraudulent Applicants with specially configured shirts that had a discreet hole in the center of the front of the shirts.   Behind the hole, on the interior of the shirt, was a pouch in which a cellular telephone was placed, with the camera lens of the cellular telephone facing outward.   Through the use of the cellular telephone's camera, a messaging application on the cellular telephone and an earpiece, co-conspirators located outside the DMV office were able to remotely provide the Fraudulent Applicants with correct CDL Test answers.

7.    The Fraudulent Applicants subsequently took and passed a CDL Road Test at various locations, including locations outside of New York State.   Thereafter, the Fraudulent Applicants visited a DMV office and obtained temporary CDLs, which were valid for 90 days.   Approximately three or four weeks later, the DMV mailed the Fraudulent Applicants permanent CDLs bearing their photographs.

8.    In furtherance of the scheme, the defendant AKMAL NARZIKULOV employed the defendant JASUR KAMOLOV to drive to locations in the Eastern District of New York and elsewhere, whereupon KAMOLOV received cash payments provided by the Fraudulent Applicants and subsequently delivered those payments to NARZIKULOV.

9.    The defendant JASUR KAMOLOV also introduced John Doe, an individual whose identity is known to the Grand Jury, to the defendant AKMAL NARZIKULOV, so that NARZIKULOV could hire John Doe as a driver.   John Doe was employed by NARZIKULOV for approximately two weeks, during which time John Doe drove to locations in the Eastern District of New York and elsewhere, received cash

payments provided by the Fraudulent Applicants and subsequently delivered those payments to NARZIKULOV.

III.   The Kidnaping

10.    After John Doe stopped working for the defendant AKMAL NARZIKULOV, NARZIKULOV demanded payment from John Doe for losses NARZIKULOV claimed to have incurred as a result of John Doe's decision to stop working for NARZIKULOV.   John Doe left New York, without paying any money to NARZIKULOV.   After a period of months, John Doe returned to New York and resided in Brooklyn.

11.    Thereafter, the defendants AKMAL NARZIKULOV, ███████ ███████ and SHERZOD MUKUMOV attempted to collect the money purportedly owed by John Doe to NARIKULOV.

12.    On March 28, 2019, the defendants AKMAL NARZIKULOV and ███████████████ physically accosted and restrained John Doe outside his residence in Brooklyn, New York.   NARZIKULOV and ███████████ physically assaulted John Doe and carried John Doe into a car driven by the defendant SHERZOD MUKUMOV.

13.    The defendants AKMAL NARZIKULOV, ███████ ███████ and SHERZOD MUKUMOV subsequently obtained a check from a bank account, opened on or about March 28, 2019, held in John Doe's name.

14.    The defendants AKMAL NARZIKULOV, ███████ ███████ and SHERZOD MUKUMOV subsequently released John Doe.

NARZIKULOV retained John Doe's property, including John Doe's wallet, driver's license and green card.

COUNT ONE
(Conspiracy to Unlawfully Produce Identification Documents)

15.     The allegations contained in paragraphs one through 14 are realleged and incorporated as if fully set forth in this paragraph.

16.     In or about and between November 2018 and April 18, 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKMAL NARZIKULOV, ███████████████████, SHERZOD MUKUMOV and JASUR KAMOLOV, together with others, did knowingly and intentionally attempt and conspire to produce identification documents, to wit: CDLs, knowing that such documents were produced without lawful authority, (a) in a manner in and affecting interstate and foreign commerce and (b) transported in the mail in the course of their production and transfer, contrary to Title 18, United States Code, Sections 1028(a)(1), 1028(c)(3)(A) and 1028(c)(3)(B).

(Title 18, United States Code, Sections 1028(b)(2)(A), 1028(f) and 3551 et seq.)

COUNT TWO
(Conspiracy to Commit Kidnaping)

17.     The allegations contained in paragraphs one through 14 are realleged and incorporated as if fully set forth in this paragraph.

18.     On or about March 28, 2019, within the Eastern District of New York and elsewhere, the defendants AKMAL NARZIKULOV, ██████████████████████ and SHERZOD MUKUMOV, together with others, did knowingly, intentionally and

unlawfully conspire to seize, confine, inveigle, decoy, kidnap, abduct and carry away and

hold for ransom and reward and otherwise a person, to wit: John Doe, and to use one or more

means, facilities and instrumentalities of interstate and foreign commerce, to wit: cellular

telephones and a bank transaction, in committing and in furtherance of the commission of the

offense, contrary to Title 18, United States Code, Section 1201(a)(1).

19.     In furtherance of the conspiracy and to effect its objects, within the

Eastern District of New York and elsewhere, the defendants AKMAL NARZIKULOV,

██████████████ and SHERZOD MUKUMOV did commit and cause to be

committed, among others, the following:

<u>OVERT ACTS</u>

(a)     On or about March 28, 2019, NARZIKULOV and

KHAMROKULOV forcibly removed John Doe from an apartment building.

(b)     On or about March 28, 2019, ███████████ used a device

to apply one or more electric shocks to John Doe, in the presence of NARZIKULOV and

MUKUMOV.

(c)     On or about March 28, 2019, NARZIKULOV and

██████████████ forcibly dragged John Doe to a vehicle where MUKUMOV was waiting.

(d)     On or about March 28, 2019, MUKUMOV drove

NARZIKULOV, █████████████ and John Doe to a Bank of America branch located in

Brooklyn, New York.

(e)     On or about March 28, 2019, MUKUMOV drove

NARZIKULOV, █████████████ and John Doe to a Payomatic check cashing store

located in Brooklyn, New York.

(f)      On or about March 28, 2019, NARZIKULOV took possession
of a Bank of America debit card and other identification documents in the name of John Doe.

(Title 18, United States Code, Sections 1201(c) and 3551 et seq.)

## COUNT THREE
(Kidnaping)

20.      The allegations contained in paragraphs one through 14 are realleged
and incorporated as if fully set forth in this paragraph.

21.      On or about March 28, 2019, within the Eastern District of New York
and elsewhere, the defendants AKMAL NARZIKULOV, ███████████████████
and SHERZOD MUKUMOV, together with others, did knowingly, intentionally and
unlawfully seize, confine, inveigle, decoy, kidnap, abduct and carry away and hold for
ransom and reward and otherwise a person, to wit: John Doe, and use one or more means,
facilities and instrumentalities of interstate and foreign commerce, to wit: cellular telephones
and a bank transaction, in committing and in furtherance of the commission of the offense.

(Title 18, United States Code, Sections 1201(a)(1), 2 and 3551 et seq.)

## COUNT FOUR
(Hobbs Act Extortion Conspiracy)

22.      The allegations contained in paragraphs one through 14 are realleged
and incorporated as if fully set forth in this paragraph.

23.      On or about and between March 28, 2019 and April 18, 2019, both
dates being approximate and inclusive, within the Eastern District of New York and
elsewhere, the defendants AKMAL NARZIKULOV, ██████████████████████ and
SHERZOD MUKUMOV, together with others, did knowingly and intentionally conspire to

obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants and others agreed to obtain property, to wit: a check and United States currency, from John Doe, with his consent, which consent was to be induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

## COUNT FIVE
(Hobbs Act Extortion)

24.    The allegations contained in paragraphs one through 14 are realleged and incorporated as if fully set forth in this paragraph.

25.    On or about and between March 28, 2019 and April 18, 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKMAL NARZIKULOV, ███████████████ and SHERZOD MUKUMOV, together with others, did knowingly and intentionally obstruct, delay and affect commerce, and the movement of articles and commodities in commerce, by extortion, in that the defendants obtained property, to wit: a check and United States currency, from John Doe, with his consent, which consent was induced through wrongful use of actual and threatened force, violence and fear.

(Title 18, United States Code, Sections 1951(a), 2 and 3551 et seq.)

## COUNT SIX
(Felon in Possession of a Firearm)

26.    The allegations contained in paragraphs one through 14 are realleged and incorporated as if fully set forth in this paragraph.

27.    On or about April 18, 2019, within the Eastern District of New York, the defendant AKMAL NARZIKULOV, having previously been convicted in a court of one

or more crimes punishable by a term of imprisonment exceeding one year, did knowingly

and intentionally possess in and affecting commerce a firearm, to wit: a 9mm semi-automatic

SCCY pistol, and ammunition.

(Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT ONE

28.     The United States hereby gives notice to the defendants AKMAL

NARZIKULOV, ███████████████████████, SHERZOD MUKUMOV and JASUR

KAMOLOV that, upon their conviction of the offense charged in Count One, the

government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section

982(a)(2)(B), which requires any person convicted of such offense to forfeit any property

constituting, or derived from, proceeds obtained directly or indirectly as a result of such

offense; and (b) Title 18, United States Code, Section 1028(b)(5), which requires any person

convicted of such offense to forfeit any personal property used or intended to be used to

commit the offense, including but not limited to two hundred ninety three thousand six

hundred fifty four dollars and zero cents ($293,654.00) seized on or about April 18, 2019,

from an address located on Avenue O in Brooklyn, New York.

29.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants AKMAL NARZIKULOV, ████████████████████████,

SHERZOD MUKUMOV and JASUR KAMOLOV:

   (a)     cannot be located upon the exercise of due diligence;

   (b)     has been transferred or sold to, or deposited with, a third party;

   (c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2)(B), 982(b)(1) and

1028(b)(5); Title 21, United States Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS TWO AND THREE

30.     The United States hereby gives notice to the defendants AKMAL

NARZIKULOV, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and SHERZOD MUKUMOV, that, upon

their conviction of either of the offenses charged in Counts Two and Three, the government

will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C)

and Title 28, United States Code, Section 2461(c), which require any person convicted of

such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds

obtained directly or indirectly as a result of such offenses.

31.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants AKMAL NARZIKULOV, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

and SHERZOD MUKUMOV:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

      (c)     has been placed beyond the jurisdiction of the court;

      (d)     has been substantially diminished in value; or

      (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

      (Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States

Code, Section 853(p); Title 28, United States Code, Section 2461(c))

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS FOUR AND FIVE

      32.     The United States hereby gives notice to the defendants AKMAL

NARZIKULOV, ███████████████████ and SHERZOD MUKUMOV that, upon

their conviction of either of the offenses charged in Counts Four and Five, the government

will seek forfeiture in accordance with: (a) Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person

convicted of such offenses to forfeit any property, real or personal, constituting or derived

from proceeds obtained directly or indirectly as a result of such offenses; and (b) Title 18,

United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c),

which require the forfeiture of any firearm or ammunition involved in or used in any

knowing violation of any other criminal law of the United States.

33.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants AKMAL NARZIKULOV, ███████████████████████████

and SHERZOD MUKUMOV:

    (a)     cannot be located upon the exercise of due diligence;

    (b)     has been transferred or sold to, or deposited with, a third party;

    (c)     has been placed beyond the jurisdiction of the court;

    (d)     has been substantially diminished in value; or

    (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Sections 924(d)(1) and 981(a)(1)(C); Title 21,

United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT SIX

34.     The United States hereby gives notice to the defendant AKMAL

NARZIKULOV that, upon his conviction of the offense charged in Count Six, the

government will seek forfeiture in accordance with Title 18, United States Code, Section

924(d)(1) and Title 28, United States Code, Section 2461(c), which require the forfeiture of

any firearm involved in or used in any knowing violation of Title 18, United States Code,

Section 922 or 924, including but not limited to one 9mm semi-automatic SCCY pistol, and

13

ammunition recovered on or about April 18, 2019, from an address located on Avenue O in Brooklyn, New York.

35.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant AKMAL NARZIKULOV:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 924(d)(1); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____

FOREPERSON

_____

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

F.#: 2019R00138

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

AKMAL NARZIKULOV, █████████████████,

SHERZOD MUKUMOV and JASUR KAMOLOV,

Defendants.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 922(g)(1), 924(a)(2), 924(d)(1), 981(a)(1)(C),
982(a)(2)(B), 982(b)(1), 1028(b)(2)(A), 1028(b)(5), 1028(f), 1201(a)(1),
1201(c), 1951(a), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

*A true bill.*

_____ *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail,* $ _____

_____

*Virginia Nguyen, Special Assistant U.S. Attorney (718) 254-6280*