

U.S. Department of Justice

United States Attorney
Eastern District of New York

RTP:FTB/VTN  
F. #2019R00138

271 Cadman Plaza East  
Brooklyn, New York 11201

December 2, 2019

By ECF

The Honorable I. Leo Glasser  
United States District Judge  
United States District Court  
225 Cadman Plaza East  
Brooklyn, New York 11201

        Re:    United States v. Akmal Narzikulov  
                Criminal Docket No. 19-223 (ILG)

Dear Judge Glasser:

        The government respectfully submits this letter to request an adjournment of the trial date, which is scheduled to start on December 9, 2019. The government has identified two pre-trial issues which it believes must be decided before trial against the defendant Akmal Narzikulov ("Akmal") can commence. The first issue arises from evidence that the government has gathered demonstrating that the defendant has, by his own misconduct, made a witness unavailable for trial, such that the witness's prior statements made to law enforcement should be admissible at trial. The second and related issue concerns a potentially unwaivable conflict involving Akmal's attorney, Mitchell A. Golub, who possesses information concerning Akmal's alleged misconduct that effectively makes him an unsworn witness in the proceedings against Akmal. Accordingly, the government respectfully asks the Court to conduct (1) a hearing pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982), to determine whether Mr. Golub has a conflict of interest that would prevent him from continuing to represent Akmal during the government's proposed Mastrangelo hearing and a trial; and (2) a hearing pursuant to United States v. Mastrangelo, 693 F.2d 269, 272 (2d Cir. 1982), to determine whether Akmal has functionally waived his Sixth Amendment rights (and any hearsay objections) with respect to the admissibility of statements made to law enforcement by a witness.

FACTUAL BACKGROUND

        The charges in this case stem from events that took place on March 28, 2019, when Akmal and others, including co-defendant Sherzod Mukumov, who pleaded guilty to kidnapping conspiracy charges on November 26, 2019, accosted a complainant (the

"Complainant"), subdued him with the use of a taser, drove him to another location and demanded money, all in an attempt to recover a debt that Akmal claimed he was owed by the Complainant.

Despite numerous attempts by special agents, the Complainant has not communicated with the agents since in and around August 2019. The lack of communication from the Complainant is in contrast to the Complainant's former level of cooperation with law enforcement. For example, the Complainant immediately reported the kidnapping incident to the New York City Police Department and assisted special agents of the Federal Bureau of Investigation ("FBI") with the investigation by making a consensual recording of a payment the Complainant made to the defendant on or about April 7, 2019. The Complainant continued to make himself available to answer questions by law enforcement authorities in the months after the kidnapping incident. Moreover, prior to August 2019, the Complainant had continued to assure special agents that he would make himself available for trial. As described further below, the government has since determined that the Complainant flew to Uzbekistan on or about September 9, 2019.

For reasons described below, the government believes that the unavailability of the Complainant is due to Akmal and his associates having paid money to the Complainant (or the Complainant's family) for the Complainant to travel to Uzbekistan – outside the jurisdiction of the Court – and to remain there until the conclusion of the trial of against Akmal.

On October 22, 2019, Akmal's court-appointed attorney, Mr. Golub, provided the following information by email to the government:

> Last week I received a call from a man telling me he was a friend of the brother of the Defendant. That brother is in Uzbekistan. The caller told me he was asked by the brother to call me regarding the Defendant's case. He told me that the brother wanted me to know that he had made financial arrangements with the family of the complainant/victim in this case. He further advised me that as a result of the financial arrangements the complainant/victim would not be coming to court for the trial, and in fact was now in Uzbekistan.[1]

Mr. Golub further informed the government that he had advised the caller that Akmal's brother had committed the crimes of witness tampering and obstruction of justice.

Upon receiving the email from Mr. Golub, the government began verifying the information provided by Mr. Golub and investigating whether Akmal was involved in arranging for the Complainant's unavailability. Among other things, travel records confirm that the Complainant flew from New York to Tashkent, Uzbekistan on a flight that departed

---

[1] Mr. Golub informed the government that he had also notified the Court that he had received this phone call.

on September 9, 2019. Records received from Uzbekistan Air show that the Complainant paid for his flight reservation, which was a one-way trip, by cash or money order on or about September 5, 2019, just four days before the flight to Tashkent. Law enforcement authorities believe that the Complainant remains in Uzbekistan at present.

The government subpoenaed toll records for telephone numbers known to be used by Mr. Golub. Information provided by Verizon in response to a subpoena shows a telephone call to Mr. Golub's office number (212-566-2242) from a phone number with the Uzbekistan country code as the prefix (the "Uzbekistani Number") on October 16, 2019, at approximately 9:11 a.m. The records suggest that the call was automatically forwarded to Mr. Golub's cell phone number.

The government reviewed audio recordings of telephone calls that Akmal made from the Metropolitan Detention Center ("MDC"), where he has been housed during the pendency of this case, from his own telephone account (excluding any calls Akmal made to his attorney), as well as calls made from the accounts of other inmates. The call recordings obtained by the government are generally in Uzbek, and the government is in the process of having certain calls translated. In the meantime, the government has received summaries of those calls.[2]

One of the calls that Akmal made from the account of another inmate occurred at approximately 7:29 a.m. on October 16, 2019, less than two hours before Mr. Golub received a call from the Uzbekistani Number. The government has received a summary of this call. According to the summary, Akmal spoke to an unidentified male ("UM1") and told UM1 that a call needed to be made to Akmal's "boss." Later in the call, the summary indicates that Akmal said to UM1 that something must be told immediately. The summary reflects that Akmal then asked UM1 if UM1 knew the "second number," which Akmal said was 212-566-2242 (Mr. Golub's office telephone number).

Akmal made another call from the account of another inmate at approximately 12:28 p.m. on October 16, 2019, approximately two hours after Mr. Golub received a call from the Uzbekistani Number. According to the summary of that call, Akmal spoke with another unidentified male ("UM2"). The summary reflects that UM2 reported to Akmal that "Mutar called and spoke to the boss." The summary indicates that UM2 told Akmal that the "boss was screaming at Mutar for telling him [boss] something." UM2 then told Akmal that Mutar was writing to UM2, saying that "it may have been a mistake telling the boss." Later in the call, Akmal asked UM2 "if Mutar asked the boss to imagine he [Mutar] didn't tell him anything." UM2 "affirm[ed]" and repeated the "story about the boss screaming and hanging up the phone."

---

[2] The summaries are not verbatim translations and are subject to revision.

3

The evidence strongly suggests that the "boss" referred to in the call summaries is Mr. Golub and that Akmal, at the very least, acquiesced in efforts to pay the Complainant (or his family) to travel overseas to be unavailable as a witness at Akmal's trial.

In addition to the evidence set forth above, the government anticipates introducing other evidence of Akmal's wrongful conduct at the Mastrangelo hearing as well as filing a superseding indictment to add witness tampering and obstruction of justice charges against Akmal.

## DISCUSSION

Based on the information set forth above, the government believes that the defendant has wrongfully caused or, at the very least, acquiesced in wrongfully causing the unavailability of the key witness against him on the kidnapping and extortion charges that he faces. Akmal's level of knowledge or participation in the "financial arrangements" made with the family of the Complainant has a direct bearing on whether prior statements made by the Complainant are admissible at trial, even if the Complainant does not personally appear to testify. Accordingly, the government respectfully moves the Court to conduct a pretrial Mastrangelo hearing to determine the admissibility of the Complainant's prior statements to law enforcement as a result of the defendant's misconduct causing the unavailability of the Complainant. See generally id.; Fed. R. Evid. 804(b)(6) (identifying hearsay exception for statements "offered against a party that wrongfully caused – or acquiesced in wrongfully causing – the declarant's unavailability as a witness, and did so intending that result").

The information obtained by the government since Mr. Golub's October 22 disclosure raises the question of whether allowing Mr. Golub to remain as counsel for Akmal would effectively make Mr. Golub an unsworn witness for the defendant or a sworn witness against him. Mr. Golub clearly possesses material and relevant information concerning the cause of the Complainant's unavailability. For example, Mr. Golub has information relating to the means and methods of communication and the specific details of the information conveyed by the third party about the payment made to the Complainant's family. Furthermore, information in the possession of Mr. Golub could lead to the identification of that third party who in turn may have additional evidence about the defendant's degree of involvement, if any.

A lawyer is generally barred from acting as both an advocate and a witness in the same proceeding. Model Rules of Professional Conduct Rule 3.7(a); Ciak v. United States, 59 F.3d 296, 304-05 (2d Cir. 1995); see also Hon. John Gleeson, Gordon Mehler & David C. James, Federal Criminal Practice: A Second Circuit Handbook § 8-6 (12th ed. 2012).

In particular, when a witness is expected to testify about a conversation with counsel where counsel's statements can be interpreted in a way that implicates the client, a conflict of interest exists if the lawyer ought to be a rebutting witness, "either to deny the conversation, or to provide an innocent explanation for the jury to consider." United States v. Cunningham, 672 F.2d 1064, 1074 (2d Cir. 1982) (approving disqualification of lawyer

4

and his firm if district judge determined on remand that testimony of witness was admissible). Whether or not the lawyer actually testifies, by trying to impeach the witness during cross-examination and by arguing in summation about what the conversation means, the lawyer becomes an unsworn witness. United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986). "The risk that [a lawyer will] become a witness at trial [is] enough alone to . . . reach this determination [to disqualify] under an abuse of discretion standard," United States v. Jones, 381 F.3d 114, 121 (2d Cir. 2004), provided that the testimony at issue is squarely relevant. United States v. Kwang Fu Peng, 766 F.2d 82, 87 (2d Cir. 1985).

The Second Circuit has held that agreeing "to limit inquiry to avoid the problem of counsel as an unsworn witness may be appropriate in some circumstances." United States v. Kliti, 156 F.3d 150, 156 n.7 (2d Cir. 1998) (reversing conviction for failure to hold Curcio hearing to determine if defendant consented to limiting cross-examination). A stipulation may be used to avoid disqualification of an advocate-witness. Torres v. Donnelly, 554 F.3d 322, 326 (2d Cir. 2009) (conflict negated by stipulation that obviated need for defense counsel's testimony).

By contrast, where defense counsel is entangled in the facts of the defendant's case such that he should either be available as a witness or would, upon remaining as defense counsel, "become an unsworn witness for the accused," it is counsel's ethical duty to withdraw, and upon failing to do so, counsel should be disqualified, regardless of the defendant's expressed willingness to waive. United States v. Locascio, 6 F.3d 924, 931-34 (2d Cir. 1993). Because the government, not the defendant, is prejudiced, "waiver . . . by the defendant is ineffective in curing the impropriety in such situations." Id. at 931, 934; see also United States v. Liszewski, No. 06 CR 130 (NGG), 2006 WL 2376382, at *3 (E.D.N.Y. Aug. 16, 2006).

Here, since Mr. Golub possesses information that would make him a witness at the government's proposed Mastrangelo hearing, the government believes that a conference should be held whereby the Court can conduct an appropriate inquiry pursuant to Curcio and advise Akmal regarding his right to conflict-free representation and determine if he can waive those rights. See Curcio, 680 F.2d at 888-90.

## CONCLUSION

For the foregoing reasons, the government seeks an adjournment of the currently scheduled trial in order for the Court to schedule and conduct (1) a Curcio hearing to determine whether Mr. Golub has an unwaivable conflict of interest that prevents him from representing Akmal; and (2) a Mastrangelo hearing to determine whether Akmal has

5

functionally waived his Sixth Amendment rights (and any hearsay objections) with respect to the admissibility of statements made to law enforcement by the Complainant.

                                                   Respectfully submitted,

                                                   RICHARD P. DONOGHUE
                                                   United States Attorney

                                 By:        /s/
                                                 Virginia T. Nguyen
                                                      Special Assistant U.S. Attorney
                                               F. Turner Buford
                                                      Assistant U.S. Attorney
                                               (718) 254-6280/6483

cc:    Mitchell A. Golub, Esq.
        Barry Zone, Esq.
        Richard Rosenberg, Esq.