RTP:VTN/FTB
F. #2019R00138

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                       Dkt. <u>19–CR-223 (S-2) (ILG)</u>

AKMAL NARZIKULOV,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - -X

<u>MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTION TO ADMIT CERTAIN EVIDENCE
OF PRIOR BAD ACTS UNDER FEDERAL RULE OF EVIDENCE 404(B)
AND TO RECONSIDER SEVERANCE</u>

                                                MARK J. LESKO
                                                ACTING UNITED STATES ATTORNEY
                                                Eastern District of New York
                                                271 Cadman Plaza East
                                                Brooklyn, New York 11201

Virginia Nguyen
       Special Assistant U.S. Attorney
F. Turner Buford
       Assistant U.S. Attorney
(Of Counsel)

I.      INTRODUCTION

The government respectfully submits this motion to admit evidence pursuant to Federal Rule of Evidence 404(b) and to request that the Court reconsider its December 9, 2019 order (Dkt. 69) (the "Order") severing the charge of unlawful possession of a firearm by a previously convicted felon.

In 2013, the defendant Akmal Narzikulov was charged in <u>United States v. Narzikulov, et al.</u>, 13-CR-601 (RJD) (the "2013 Case") with participating in a fraudulent scheme between April 2013 and September 2013 wherein he assisted individuals seeking commercial driver licenses ("CDLs") in cheating on driver license exams administered by the New York Department of Motor Vehicles ("DMV") in return for payment (the "Prior Scheme"). In 2015, Narzikulov pleaded guilty to honest services fraud conspiracy. Because Narzikulov's involvement in the Prior Scheme constitutes "other crimes" evidence that is admissible under Federal Rule of Evidence 404(b), the government seeks admission of Narzikulov's allocution and the judgment entered against him in the 2013 Case.

The government furthers moves the Court to reconsider its Order granting the defendant's motion to sever Count Six of the superseding indictment filed on November 5, 2019 (the "S-1 Indictment"), which charged Narzikulov with possession of a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g). The government makes this motion based on the second superseding indictment returned by a grand jury on January 27, 2020 (the "S-2 Indictment") that included new charges against Narzikulov and that was based on evidence that was not known to the government when the Court severed Count Six. The additional charges and relevant evidence substantially reduce the prejudicial effect of jointly trying the felon-in-possession charge with the other charges against Narzikulov.

II.      BACKGROUND

    A.    The Charged Offenses

This case arose from the kidnapping of an individual ("John Doe") by Narzikulov and co-defendants Sherzod Mukumov and Co-Conspirator #3[1] on March 28, 2019. As described in the criminal complaint filed in this matter (Dkt. 14), Narzikulov and other co-conspirators assisted applicants for CDLs in cheating on tests administered by the DMV in exchange for cash (the "2018 Scheme"). The 2018 Scheme involved the use of wireless communication devices, hidden within the clothing worn by the fraudulent applicants, which Narzikulov's co-conspirators used to communicate correct answers to the applicants as they took the written tests at the DMV locations. (Dkt. 14 at 4-5).

John Doe was involved in the 2018 Scheme for only a brief time, during which he picked up cash from driver license applicants and delivered it to Narzikulov. (Id.). John Doe also assisted test takers in concealing electronic equipment to facilitate their cheating on DMV tests. (Id.). After John Doe stopped participating in the 2018 Scheme, he left New York City for several months before returning to Brooklyn. (Id. at 5). Upon his return, he was kidnapped at his residence by Narzikulov, Mukumov and Co-Conspirator #3. (Id.). According to John Doe, the motive for the kidnapping was the collection of a debt that Narzikulov claimed John Doe owed for having unexpectedly exited the 2018 Scheme. (Id.). Video of the kidnapping showed John Doe being subdued by use of a taser and subsequently dragged to a waiting car by Narzikulov and Co-Conspirator #3. (Id. at 8).

Narzikulov and Mukumov were arrested on the criminal complaint on April 18, 2019. On the same day, federal agents executed a search warrant at Narzikulov's apartment.

---

[1]    Co-Conspirator #3 remains at large and is therefore not named in this submission.

(Dkt. 15 at 1).  During the search, agents seized a number of items constituting evidence of the 2018 Scheme, including numerous identification documents in the names of other individuals; ledgers; electronic equipment, including smart phones and earpiece receivers; and DMV manuals, application materials, and other records related to the DMV's commercial driver's license testing administration.  (Id. at 2).  The agents also seized and subsequently examined a number of electronic devices from the apartment.  In addition, the agents recovered a firearm and ammunition, and more than $290,000 in cash.  (Id.).

Narzikulov, Mukumov and Co-Conspirator #3 were charged in an indictment that was returned on May 13, 2019.  (Dkt. 23).  That indictment contained four counts: conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c); kidnapping, in violation of 18 U.S.C. § 1201(a)(1); conspiracy to commit Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a); and Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a).

On November 5, 2019, a grand jury returned the S-1 Indictment charging Narzikulov, Mukumov, Co-Conspirator #3 and another individual named Jasur Kamolov with one count of conspiracy to produce false identification documents, in violation of 18 U.S.C. §§ 1028(b)(2)(A) and 1028(f), based on their collective participation in the 2018 Scheme.[2]  (Dkt. 48).  The S-1 Indictment also included the same kidnapping conspiracy, kidnapping, extortion conspiracy, and extortion charges against Narzikulov, Mukumov, and Co-Conspirator #3.[3]  (Id.).  The S-1 Indictment also included a new count against only Narzikulov, charging him with possession of a firearm after having previously been convicted of a felony, in violation of 18

---

[2]    On January 8, 2020, Kamolov pleaded guilty to conspiracy to produce false identification documents, in violation of 18 U.S.C. §§ 1028(b)(2)(A) and 1028(f).  (Dkt. 72).
[3]    On November 26, 2019, Mukumov pleaded guilty to conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c).  (Dkt. 62).

3

U.S.C. § 922(g). (Id.). The 922(g) charge was predicated on the recovery of the firearm and ammunition during the search of Narzikulov's residence by agents on April 18, 2019, described above.

On or about November 20, 2019, Narzikulov moved to sever the trial of the felon-in-possession charge (Count Six of the S-1 Indictment) on the grounds that "[t]here will be no evidence presented at trial that the recovered gun was used in the course of the kidnapping." (Dkt. 56 at 4). The Court granted Narzikulov's motion on December 19, 2019, finding that the prejudice introduced by Count Six outweighed the benefits of joinder. (Order at 6).[4]

Subsequent to the Court's ruling, the government obtained evidence that on the night of March 28, 2019 (the same day as John Doe's kidnapping), Narzikulov used a loaded firearm to threaten an individual identified in the S-2 Indictment as Co-Conspirator #1 in an attempt to extort money from Co-Conspirator #1 and John Doe. Specifically, the government's evidence will establish that Narzikulov threatened Co-Conspirator #1 because Co-Conspirator #1 had thwarted Narzikulov's attempt to collect money from John Doe. (See Dkt. 82 at 6-7).

On January 27, 2020, a grand jury returned the S-2 Indictment against Narzikulov, Co-Conspirator #3 and two additional co-defendants, Firuz Juraev and Murodjon Sultanov. (Dkt. 82). The S-2 Indictment, which contained eleven counts in total, charged Narzikulov with the same crimes as the S-1 Indictment (Dkt. 82 at 9-12), but as to Count One (conspiracy to produce false identification documents), the S-2 Indictment also included allegations related to licenses issued by the Taxi and Limousine Commission of New York City. (Id. at 5, 9).

---

[4] In its Order, the Court denied Narzikulov's motion to sever the trial of then-named co-defendant Jasur Kamolov.

Counts Six and Seven of the S-2 Indictment contained new charges against Narzikulov and Co-Conspirator #3. Specifically, Count Six alleged that Narzikulov and Co-Conspirator #3 threatened violence to Co-Conspirator #1 in furtherance of a plan to commit extortion, in violation of 18 U.S.C. § 1951(a). (Id. at 12-13). Count Seven alleged that Narzikulov and Co-Conspirator #3 possessed and brandished a firearm during and in relation to that crime, in violation of 18 U.S.C. § 924(c). (Id. at 13). Count Eight of the S-2 Indictment charged Narzikulov, as before, with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Id. at 13-14).[5]

B. The Prior Scheme

In the Prior Scheme, which took place from in or about and between April 2013 and September 2013, Narzikulov accepted payment in return for helping applicants for CDLs cheat on the written tests administered by the DMV. (2013 Case, Dkt. 60). Narzikulov and his co-conspirators provided CDL applicants with pencils encoded with a series of markings that indicated the correct answers to written exams administered by DMV. (Id. at 4). In other instances, Narzikulov arranged it so that CDL applicants could leave the DMV facility with their uncompleted tests after receiving signals from security guards at the facility that it was safe to do so. (Id. at 4-5). The CDL applicants would then give the tests to a co-conspirator, who would take the tests instead of the applicants, and the CDL applicants would return to the DMV facility and submit the completed tests to be graded. (Id. at 5). Narzikulov and his co-conspirators also

---

[5] Counts Nine, Ten, and Eleven of the S-2 Indictment contained new charges of witness tampering that arose out of a scheme orchestrated by Narzikulov (while incarcerated) to offer money to key witnesses against him to travel overseas and remain there until after any trial against him had concluded.

bribed security guards to facilitate the Prior Scheme. (Id. at 4-5). On February 3, 2015, Narzikulov pleaded guilty to honest services fraud conspiracy. (2013 Case, Dkt 273).

During the change of plea hearing held on February 2, 2015, Narzikulov admitted to the following: (1) he took money from people to help them obtain driver licenses; (2) he provided test answers to applicants who could not pass the test on their own; (3) he knew that security guards were receiving gratuities to allow the cheating to occur; (4) he worked with others to perpetrate the scheme; and (5) the cheating occurred at locations in Manhattan and Jamaica, Queens. (2013 Case, Dkt. 156 (February 2, 2015 Transcript) at 24-27).

III. EVIDENCE OF THE PRIOR SCHEME IS ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 404(B)

A. Legal Standard

Federal Rule of Evidence 404(b) provides that evidence of other crimes are admissible for purposes other than "to prove the character of a person in order to show action in conformity therewith," including as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Courts in the Second Circuit take an "inclusionary approach" to Rule 404(b) such that where "evidence is relevant and it is not offered to prove criminal propensity," it is admissible. United States v. Pipola, 83 F.3d 556, 565-566 (2d Cir. 1996); see also United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) ("We have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").

The Second Circuit has established a three-prong test for the admission of other acts evidence under Rule 404(b): (1) the evidence must be offered for a purpose other than to prove the defendant's bad character or criminal propensity; (2) the evidence is relevant under Rules 401 and 402 of the Federal Rules of Evidence and its probative value is not substantially

6

outweighed by the danger of unfair prejudice; and (3) the court must provide an appropriate limiting instruction to the jury, if one is requested.  See United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992); United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991).

Although some of the permissible uses of other crimes evidence are enumerated in Rule 404(b) itself, that list is non-exhaustive.  In particular, the Second Circuit has routinely approved of the government's use of such evidence as a means of providing the jury with background information as to the currently charged crimes, an explanation of the development of criminal relationships, and an illustration of the mutual trust that existed between co-conspirators.  See United States v. Rosa, 11 F.3d 315, 333-334 (2d Cir. 1993) (holding that co-defendants' relationship over a 14-year period, during which stolen property and narcotics crimes were committed, "was properly admitted to explain how the illegal relationship between the two [defendants] developed and to explain why [one defendant] . . . appointed [the other defendant] . . . to a leading position in the Organization"); Pipola, 83 F.3d at 566 (evidence of prior uncharged armed robberies admitted to show the defendant's leadership role in relation to his co-conspirators).  Where Rule 404(b) evidence is offered for the purpose of establishing the defendant's knowledge, the government must "identify a similarity or connection between the two acts that makes the prior act relevant to establish knowledge of the current act." United States v. McCallum, 584 F.3d, 471, 475 (2d Cir. 2009); United States v. Kalish, 403 Fed. App'x 541, 545 (2d Cir. 2010) (amended summary order).

B. Evidence of the Prior Scheme is Relevant and Will Not Cause Undue Prejudice

The government seeks to admit Narzikulov's guilty plea allocution and the judgment entered against him in connection with the Prior Scheme as "other crimes" evidence under Rule 404(b).  Such evidence is admissible for several recognized purposes under Rule

7

404(b), including as proof of Narzikulov's intent, plan, knowledge and the absence of any mistake or accident with regard to his role in the 2018 Scheme.

Narzikulov participated in the Prior Scheme between April 2013 and September 2013. In or about and between October 2013 and December 2017, and as a consequence of his participation in the Prior Scheme, Narzikulov was either in the custody of the Bureau of Prisons or under the supervision of the United States Department of Probation. By November 2018—less than one year after being released from custody in connection with the Prior Case—Narzikulov was already participating in the 2018 Scheme.

In both the Prior Scheme and the 2018 Scheme, Narzikulov helped individuals cheat on DMV licensing tests, in exchange for money. Based on the procedures of the DMV, Narzikulov was required to enlist the assistance of others to effectively perpetrate both schemes. In the Prior Scheme, Narzikulov relied on security guards, and in the 2018 Scheme, Narzikulov relied on a co-conspirator to surreptitiously view test questions and transmit the answers using wireless audiovisual devices.

Narzikulov's participation in the Prior Scheme is admissible to refute any claim that he lacked the criminal intent necessary to commit the crime charged in Count One—conspiracy to unlawfully produce identification documents—and as such is admissible under Rule 404(b). See United States v. Brand, 467 F.3d 179, 197 (2d Cir. 2006) ("We have long acknowledged that 'prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged.'") (quoting United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993)); McCallum, 584 F.3d at 475 (requiring proof of "a similarity or connection between the two acts that makes the prior act relevant to establish knowledge of the current act").

The evidence the government seeks to admit is relevant to Narzikulov's intent and knowledge, particularly because Narzikulov has suggested that an innocent explanation exists for the evidence found in his apartment. Specifically, he has claimed that the more than $290,000 in cash and numerous photo identification documents found at his residence were related not to the 2018 Scheme but to his mother's practice of serving as an unofficial bank for members within the Uzbek community. (Dkt. 122 (Transcript of June 19, 2019 Bail Hearing) at 16). The judgment against Narzikulov and his allocution in connection to the Prior Scheme tend to refute these claims. The evidence of Narzikulov's involvement in the Prior Scheme to defraud the DMV by receiving cash payments from CDL applicants makes it more likely that the cash, identification documents, and DMV-related materials recovered from his home were possessed by Narzikulov in furtherance of the 2018 Scheme, rather than by his mother for some unrelated purpose.

Additionally, the fact that Narzikulov was involved in the Prior Scheme by directly giving answers to CDL applicants and was convicted for honest services fraud conspiracy explains why Narzikulov relied on others, such as John Doe and the co-defendants named in the S-1 and S-2 Indictments to personally meet with CDL applicants and provide them with the necessary equipment to cheat on tests. The government submits that Narzikulov learned from his past involvement in the Prior Scheme how to better conceal his involvement in the 2018 Scheme by relying on co-conspirators to collect money from CDL applicants and to meet CDL applicants at DMV locations. In the absence of the evidence of the Prior Scheme, Narzikulov could argue that his co-defendants were the ones responsible for planning and executing the 2018 Scheme and that he did not have the criminal intent or knowledge required to be found guilty of Count One of the S-2 Indictment. Moreover, Narzikulov's familiarity with the DMV's

procedures and the CDL application process from his involvement in the Prior Scheme provide an explanation for how and why he came to be the leader and organizer of the 2018 Scheme, as the government's evidence will demonstrate.

While the government could accomplish some of its 404(b) objectives for admitting the Prior Scheme evidence by introducing witnesses or other evidence to show Narzikulov's participation in that scheme, Narzikulov's own allocution admitting his role in the Prior Scheme and the resulting judgment against him are directly probative of his state of mind, and the government may properly choose to prove prior acts in this way. See United States v. Green, 873 F.3d 846, 864 (11th Cir. 2017) ("The prosecutor can, of course, prove the prior act by calling witnesses to testify. Or, as is often the case when the act has become the subject of a conviction, the prosecutor can prove the act by introducing a certified judgment of conviction."); see, e.g., United States v. Moran-Toala, 726 F.3d 334, 346 (2d Cir. 2013) (finding no abuse of discretion where the trial court admitted defendant's plea allocution from a prior narcotics conspiracy case to prove knowledge in a prosecution for exceeding authorized access to a government computer in furtherance of a narcotics conspiracy); United States v. Agostini, 184 Fed. Appx. 128, 130 (2d. Cir. 2006) (affirming admission of a prior guilty plea to distribution of narcotics to establish knowledge of the narcotics trade and intent to join a narcotics conspiracy); United States v. Hurt, No. 3:14cr250 (JBA), 2016 U.S. Dist. LEXIS 446, at *21-22 (D. Conn. Jan. 4, 2016) (affirming admission of a prior guilty plea to bank fraud to demonstrate knowledge and intent in a prosecution for wire fraud).

The probative value of the proffered evidence is not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The evidence which the government seeks to introduce is no more prejudicial than the other evidence upon which the government will rely to

10

prove Narzikulov's guilt.  The Prior Scheme does not involve the use of violence or intimidation and would not unduly prejudice the jury.  See United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (other crimes evidence is not unfairly prejudicial where it is not "any more sensational or disturbing than the crimes with which [the defendant] was charged").  Since Narzikulov is already charged with a scheme to help applicants cheat on driver's license exams along with related kidnapping, extortion, firearms, and witness tampering offenses, the prior acts evidence sought to be admitted by the government is no more serious than the evidence to which the jury already will be exposed.  See United States v. Brennan, 798 F.2d 581, 589-90 (2d Cir. 1986) (evidence of defendant's prior involvement in fixing a case not unduly prejudicial; admissible to help jury understand contours of illegal relationship between defendant and government witness); accord United States v. Harris, 733 F.2d 994, 1006 (2d Cir. 1984) (collecting cases).

Even assuming, arguendo, that admission of the proposed evidence will create a danger of prejudice, a cautionary instruction will mitigate any such risk.  See, e.g., United States v. Abu-Jihaad, 630 F.3d 102, 133 (2d Cir. 2010) ("Absent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions") (citation omitted).  Accordingly, Narzikulov's judgment of conviction and guilty plea allocution  in the Prior Scheme should be admitted pursuant to Federal Rule of Evidence 404(b).

IV. **THE COURT SHOULD RECONSIDER AND DENY SEVERANCE OF THE FELON-IN-POSSESSION CHARGE DUE TO NEW EVIDENCE THAT MITIGATES ITS PREJUDICIAL EFFECT**

   A. Legal Authority

The Court has discretion to reconsider its ruling severing the felon-in-possession charge based on new evidence that the government developed subsequent to the Court's Order and that forms the basis for Counts Six and Seven of the S-2 Indictment (threatening physical

violence in furtherance of a plan to extort Co-Conspirator #1 and using, carrying and possessing a firearm, respectively). Although the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration, the Second Circuit has held that such motions may be filed in criminal cases. See United States v. Clark, 984 F.2d 31 (2d. Cir. 1993). A court is justified in revisiting its prior rulings in subsequent stages of the same case in the presence of "cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." See United States v. Shellef, 756 F. Supp. 2d 280, 288 (E.D.N.Y. 2011) (quoting Ali v. Mukasey, 529 F.3d 478, 490 (2d Cir. 2008)).

B. Argument

In the Court's Order granting Narzikulov's motion to sever Count Six of the S-1 Indictment, the Court set out the legal standard for severance:

> If the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). However, the burden to show prejudice is typically a heavy one. The Defendant must convince the court that "the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials."

(Order at 1-2) (citations omitted). In making this decision, "[r]elevant factors to be considered include whether the joinder of counts is proper, whether separate trials would require much of the same evidence, and whether the danger of unfair prejudice may be limited by alternative measures." United States v. Morris, S4 11 CR 912, 2014 WL 1041309, at *3 (S.D.N.Y. Mar. 18, 2014). More specifically, with respect to felon-in-possession charges, the Second Circuit has held:

> Where, as here, there is a logical connection between the felon-in-possession count and the other charges, there is a similarity in the

12

> evidence necessary to prove the different charges, the trial court takes steps to limit the danger of prejudice and gives a proper limiting instruction, and the defendant is not substantially or unfairly prejudiced, a district court may exercise its sound discretion in denying a motion to sever a felon-in-possession count from other charges for trial.

United States v. Page, 657 F.3d 126, 132 (2d Cir. 2011).

In opposing Narzikulov's severance motion, the government relied on Page in arguing that the felon-in-possession count was properly joined with the charges of conspiracy to produce false identification, kidnapping and extortion because the firearm was recovered in Narzikulov's residence along with evidence (e.g., hundreds of thousands of dollars of cash, DMV documents and identification documents) that was relevant and admissible in connection with those other charges, and a jury could therefore reasonably infer that Narzikulov used the firearm to safeguard the means, instrumentalities, and proceeds of his criminal enterprise. The Court disagreed, ruling that Page was inapposite because of the lack of a "logical connection" in the instant case between the felon-in-possession count and other charges in the in the S-1 Indictment. (Order at 5).

The government respectfully submits that the evidence developed subsequent to the Court's ruling, namely, that Narzikulov brandished a loaded firearm at Co-Conspirator #1 in furtherance of the extortion of John Doe, now creates a direct connection between the felon-in-possession charge and other charges of the S-2 Indictment. Indeed, the government intends to argue from the evidence that the firearm recovered from Narzikulov's residence on April 18, 2019 is the same firearm that Narzikulov used to threaten Co-Conspirator #1 on March 28, 2019, and therefore the firearm is now inextricably intertwined with Counts Six and Seven of the S-2 Indictment (threatening physical violence in furtherance of a plan to extort Co-Conspirator #1 and using, carrying and possessing a firearm, respectively). See United States v. Sterling, Cr.

13

No. 16-488 (LAK), 2017 U.S. Dist. LEXIS 80424, *14 (S.D.N.Y. May 24, 2017) (finding the facts to be "on all fours" with Page because "there [was] a logical connection among the four counts in the indictment" where the felon-in-possession counts "charge[d] that the defendants possessed ammunition fired during the shooting charged in Count Two, which in turn was alleged to have been in furtherance of the drug conspiracy charged in Count One").

In granting Narzikulov's severance motion, the Court also ruled that the prejudice he would suffer as a result of the government introducing evidence of his prior conviction to prove the felon-in-possession charge would outweigh the minor efficiencies in holding one trial. As discussed above, the government submits that the judgment and guilty plea allocution underlying Narzikulov's 2015 conviction for honest services fraud should be admitted to prove his intent, knowledge, motive and plan to commit the crime charged in Count One. Were the Court to admit this evidence under Rule 404(b), the jury will necessarily be aware of the fact of the defendant's prior conviction, which is all that is necessary to establish the prior conviction element of the felon-in-possession charge. Because the jury will be aware of the prior conviction, severing Count Six to avoid the potential prejudice to Narzikulov if the jury were to learn of his prior conviction would no longer be warranted.

Finally, the Court also reasoned that a separate trial for the felon-in-possession charge would not unduly strain the resources of the court, since the matter could be tried within a matter of days. (Order at 6). At the time of the Court's Order, the relevant admissible evidence to prove the felon-in-possession charge was primarily limited to the search of Narzikulov's residence on April 18, 2019, and the resulting recovery of the firearm and ammunition. Now, however, there is evidence that Narzikulov used a loaded firearm just a few weeks earlier, on or about March 28, 2019, to threaten and extort Co-Conspirator #1, and the government would seek

to introduce evidence that Narzikulov possessed a firearm on March 28, 2019, to prove that he knowingly and intentionally possessed a firearm on April 18, 2019. If the Court were to hold a separate trial on the felon-in-possession charge, the same witnesses would be required to testify at two trials about precisely the same events. The government submits therefore that judicial economy favors holding one trial. The government submits that this is especially true given the judicial resources consumed by even brief rials during the COVID-19 pandemic.

V.  CONCLUSION

For the reasons stated above, the government respectfully requests that the Court (i) permit the government to introduce Narzikulov's guilty plea allocution and judgment of conviction in the Prior Scheme pursuant to Rule 404(b) and (ii) reconsider its severance ruling and order the felon-in-possession charge to be tried jointly with the remaining counts in the S-2 Indictment.

Dated: Brooklyn, New York
April 22, 2021

Respectfully submitted,

MARK J. LESKO
ACTING UNITED STATES ATTORNEY

By: /s/ Virginia Nguyen
Virginia Nguyen
    Special Assistant United States Attorney
F. Turner Buford
    Assistant United States Attorney
(718) 254-6483/6280

15