NR:VTN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JASUR KAMOLOV,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND
AFFIDAVIT IN
SUPPORT OF ARREST
WARRANT

(18 U.S.C. § 1349)

Case No. 19-MJ-933

EASTERN DISTRICT OF NEW YORK, SS:

Kristen Schill, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

In or about and between August 2018 and November 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JASUR KAMOLOV, and others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the New York State Department of Motor Vehicles and to obtain property by means of false and fraudulent pretenses, representations, or promises, and for the purpose of executing such scheme and artifice, caused to be deposited in any post office and authorized depository for mail matter, any matter and thing to be sent and delivered by the Postal Service, contrary to Title 18, United States Code, Section 1341.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.     I am a Special Agent with the FBI, duly appointed according to law and acting as such.   I have been a Special Agent with the FBI for approximately four years.   I am currently tasked with investigating crimes involving public corruption and other crimes against the government.

2.     During my tenure with the FBI, I have participated in numerous investigations, during the course of which I have: (a) conducted physical and wire surveillance; (b) executed search warrants; (c) reviewed and analyzed numerous taped conversations of a criminal nature; (d) debriefed cooperating witnesses and confidential sources; (e) monitored wiretapped conversations and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals engaged in criminal activity, including identity and benefits fraud.   Through my training, education and experience, I have become familiar with (a) the manner in which identity frauds and other crimes related to public corruption are committed and concealed; (b) methods of payment for such activity; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement.

3.     I have personally participated in the investigation described herein. From my participation in the investigation and from my review of reports made by other federal agents and local police officers and from my conversations with other law

---

[1]     Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

enforcement officers, I am familiar with the facts and circumstances set forth in this Affidavit.  Because this Affidavit is being submitted for the limited purpose of establishing probable cause to arrest, I have not set forth each and every fact learned during the course of this investigation, but simply those facts which I believe are necessary to establish probable cause to arrest.

A.    The CDL Scheme Investigation

4.    I am currently a case agent for an investigation into a group of individuals who have compromised the integrity of the examination process for issuance of commercial driver's permits and licenses by the New York State Department of Motor Vehicles (the "DMV")

5.    In New York State, drivers of certain commercial vehicles, such as large buses and heavy transportation trucks, are required to possess a commercial driver's license ("CDL").   In order to obtain a CDL in New York, all applicants ("CDL Clients") are required to, among other things, pass a test covering various subjects related to the safe operation of large vehicles.

6.    New York's CDL test is administered in a multiple choice format. The CDL test is taken at a computer terminal with a monitor that displays the questions. The sequence of the multiple choice questions on the test is randomized by the DMV's testing software.

7.    A CDL Client who passes a CDL test is then eligible to take the CDL road test.   After passing the CDL road test and waiting at least one business day, a CDL Client must visit a DMV Office to obtain a temporary CDL, valid for 90 days.

Approximately three to four weeks later, the DMV sends the CDL Client, by the United States Postal Service, a permanent CDL bearing the CDL Client's photograph.

8.      The investigation has identified the defendant JASUR KAMOLOV as part of a conspiracy that assists CDL Clients in cheating on written CDL tests (hereinafter, the "CDL Scheme").

B.      The Confidential Source

9.      During the course of the investigation, I have received information from a confidential source ("CS") who has acknowledged participation in the CDL Scheme. CS has no prior criminal record and was unknown to FBI investigators until March 2019. At that time, CS began communicating with law enforcement officials to report that CS had been assaulted and kidnapped by three men whom he identified as being part of the CDL Scheme, specifically Akmal Narzikulov (hereinafter "Akmal"), Sherzod Mukumov (hereinafter "Sherzod"), and a third individual who shall hereinafter be referred to as Co-conspirator #3.[2]

10.      According to CS, in or about November and December 2018, KAMOLOV, who was a friend of CS, introduced CS to Akmal so that CS could inquire about working for Akmal as a driver and delivery person.   Thereafter, CS began working for Akmal.

11.      Akmal initially employed CS to drive during the evenings to designated residential addresses where CS would pick up cash owed to Akmal.   CS subsequently

---

[2]      Akmal, Sherzod and Co-Conspirator #3, have been charged by indictment with the crimes of kidnapping, Hobbs Act extortion and conspiracy to commit those crimes.  See 19-CR-223 (ILG).   Akmal and Sherzod were initially arrested on April 18, 2019.   Co-conspirator #3 remains at large.

learned that the funds that CS was retrieving were payments to Akmal by CDL Clients in connection with the CDL Scheme.

12.     During CS's period of employment by Akmal, which lasted approximately two weeks, CS observed Akmal and Sherzod providing CDL Clients with devices to facilitate cheating on CDL tests.   Thereafter, CS also began to personally drive CDL Clients to DMV locations within Brooklyn, New York and elsewhere, and provide devices and instructions to CDL Clients to facilitate the cheating.

13.     On at least two occasions, CS provided a CDL Client with a specially configured shirt that had a discreet hole in the front center.   Behind the hole, on the interior of the shirt, was a pouch in which CS placed a cellular telephone that CS had received from Akmal.   CS ensured that the camera lens of the cellular telephone was facing outward.   A messaging application on the cellular telephone was used, in conjunction with an earpiece provided by CS, so the CDL Client could hear the person on the other end of the line as he or she provided answers for the CDL test.

C.    Admissions by the Defendant

14.     On or about September 24, 2019, in an interview with FBI agents, KAMOLOV provided the following information, in sum, substance and part.   KAMOLOV was informed at the outset of the interview, which occurred at KAMOLOV's residence, that his participation was voluntary.

15.     In 2018, KAMOLOV began working as a driver for Akmal.[3] KAMOLOV worked for Akmal for approximately three to four months.   KAMOLOV's job was to pick up money from people and then deliver the money to Akmal.

16.     KAMOLOV assisted individuals who were trying to get a driver's permit, driver's license or CDL, i.e. CDL Clients, from the DMV at West 8th Street in Brooklyn, New York.   KAMOLOV explained more specifically that a CDL Client would arrive to the vicinity of the DMV, contact KAMOLOV by phone and meet KAMOLOV. KAMOLOV would then contact Akmal by phone and have the CDL Client talk to Akmal. After speaking with Akmal, the CDL Client would put on "equipment," which consisted of a t-shirt that had a Samsung cell phone attached to the inside of the t-shirt.   The CDL Client would then go into the DMV.

17.     KAMOLOV estimated that he personally assisted CDL Clients with their equipment on two occasions.   KAMOLOV stated he had seen Co-conspirator #3 assist CDL Clients in the same manner nearly every day while KAMOLOV worked for Akmal.

18.     KAMOLOV understood that he, Akmal and Co-conspirator #3 were assisting CDL Clients in unlawfully obtaining driver's permits, driver's licenses and CDLs from the DMV.

19.     As noted above, the investigation to date has revealed that CDL Clients paid Akmal in the expectation that the CDL Scheme would enable them to fraudulently

---

[3] At the time KAMOLOV began working for Akmal, KAMOLOV only knew Akmal by his first name.   KAMOLOV only learned Akmal's full name after Akmal's arrest in April 2019.

obtain CDLs which, as noted above, were sent through the mail in the normal course of business of the DMV.

20.     After a few months, KAMOLOV stopped working for Akmal.   Akmal tried to convince KAMOLOV to continue working.   Instead, KAMOLOV introduced CS to Akmal so that Akmal could hire CS as a driver.   CS worked for Akmal for a few days and then quit and moved to California to avoid having continued contact with Akmal.

21.     On or about October 4, 2019, law enforcement agents interviewed KAMOLOV in the presence of an attorney, pursuant to a written proffer agreement between the United States Attorney's Office and KAMOLOV.   At the conclusion of that interview, the agents, KAMOLOV and KAMOLOV's attorney made plans to meet again in a few days, but agreed to grant KAMOLOV some time to consult his schedule about his availability.

22.     On October 11, 2019, law enforcement authorities were notified that KAMOLOV had reserved a flight departing from John F. Kennedy Airport in Queens, New York on October 13, 2019, with a destination of Tashkent, Uzbekistan.

D.     Evidence Corroborating the Defendant's Involvement in the CDL Scheme

23.     On or about May 17, 2019, law enforcement authorities obtained a warrant to search a Samsung cellular telephone (the "Samsung Phone") and other electronic devices, that were recovered from Akmal's home and believed to have been used by Akmal in furtherance of the CDL Scheme.   See Dkt. No. 19-472-M (CLP).   A search of the Samsung Phone revealed numerous communications between KAMOLOV and Akmal, from in or about and between April 2018 and April 2019, including voice messages, text messages, and exchanges of videos and images, through different messaging applications, such as Viber and Telegram.   Two examples of those communications are provided below.

    a. On or about August 17, 2018, Akmal sent an image to KAMOLOV of a document revealing the results of a CDL road test taken by another individual on August 14, 2018.   The document contains the following information in the heading:

> Testing Organization: Berks Career and Technology Center / PA
> Applicant: [Last Name, First Name] / NY / 905307245
> Skill Test: Initial CDL Class A / No Endorsement / With Air Brakes / Automatic Transmission

    b. On or about September 23, 2018, KAMOLOV sent Akmal an image of a printout from the website of the American Association of Motor Vehicle Administrators (https://www.aamva.org), with a heading that reads, "Commercial Skills Test Information Management System (CSTIMS)."

    24.    Law enforcement authorities also identified certain images saved on the Samsung Phone indicative of KAMOLOV's involvement in the CDL Scheme, including the following examples.

    a. One image depicted a letter bearing the letterhead of the DMV, Driver Improvement Bureau in Albany, New York, dated February 12, 2019.   The letter was addressed to KAMOLOV at his residence in Brooklyn, New York, and reads, in pertinent part, "We have been notified by the State of Pennsylvania that there are reasonable grounds to believe that the commercial driver license (CDL) issued to you by that state was improperly issued. Therefore, you must retake the road test, to determine your qualifications to maintain your current CDL status."

    b. One image depicted a notepad on which what appeared to be a handwritten schedule of hours that KAMOLOV worked for Akmal.   More specifically, the piece of notepad had the name "JASUR" written on the top of the page. Beneath that were columns of information which contained what I believed to be the date of an unidentified month, e.g. "13, 14, 15," and ranges of time, e.g. "9:00 PM 12:00 PM," and "9:00 AM 19:00 PM."

    25.    Based on the investigation and from statements made by KAMOLOV, I understand that KAMOLOV presently works as an Uber driver in New York City, using his own personal vehicle.   Accordingly, KAMOLOV has no need to obtain a CDL for himself,

nor would he have any legitimate reason to communicate with Akmal or anyone else about the results of a CDL road test conducted in Pennsylvania for a CDL Client.

WHEREFORE, your deponent respectfully requests that the defendant JASUR KAMOLOV, be dealt with according to law.  Your affiant also respectfully requests that this affidavit and any issued arrest warrant be sealed as the defendant remains at large and public disclosure of this affidavit and/or arrest warrant may lead him to flee or otherwise seek to avoid apprehension.

Kristen Schill
Special Agent, Federal Bureau of Investigation

Sworn to before me this
11th day of October, 2019

THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**TO: Clerk's Office**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

### APPLICATION FOR LEAVE
### TO FILE DOCUMENT UNDER SEAL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF APPLICATION
FOR AR      :RANT

19-MJ-933
_____
Docket Number

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SUBMITTED BY: Plaintiff _____ Defendant _____ DOJ ✔

Name: Virginia T. Nguyen

Firm Name: U.S. Attorney's Office for the EDNY

Address: 271A Cadman Plaza East
         Brooklyn, NY 11201

Phone Number: 718-254-6280

E-Mail Address: Virginia.Nguyen@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES _____ NO ✔
If yes, state description of document to be entered on docket sheet:

_____
_____

**MANDATORY CERTIFICATION OF SERVICE:**

**A.)** _____ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** _____ Service is excused by 31 U.S.C. 3730(b), or by the following other statute or regulation: _____ ; or **C.)** ✔ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

October 11, 2019
_____
DATE

---

**A) If pursuant to a prior Court Order:**

Docket Number of Case in Which Entered: __N/A__

Judge/Magistrate Judge: _____

Date Entered: _____

**B) If a new application,** the statute, regulation, or other legal basis that authorizes filing under seal

Risk of flight by target in ongoing investigation

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE, AND MAY NOT BE UNSEALED UNLESS ORDERED BY THE COURT.**

DATED:  Brooklyn                    , NEW YORK
        October 11, 2019

_____
**U.S. DISTRICT JUDGE/U.S. MAGISTRATE JUDGE**

RECEIVED IN CLERK'S OFFICE October 11, 2019
_____
                                    DATE



_____
                    SIGNATURE