

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| RTP:VTN/FTB | *271 Cadman Plaza East* |
| F. #2019R00138 | *Brooklyn, New York 11201* |

June 7, 2021

By Hand and ECF

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Akmal Narzikulov
                  Criminal Docket No. 19-223 (ILG)

Dear Judge Glasser:

      The government respectfully submits these motions in limine in advance of trial in the above-referenced case, which is scheduled to commence on June 21, 2021. The defendant is charged in a second superseding indictment with the following crimes: conspiracy to unlawfully produce identification documents, in violation of 18 U.S.C. § 1028 (Count One); conspiracy to commit kidnaping, in violation of 18 U.S.C. § 1201(c) (Count Two); kidnaping, in violation of 18 U.S.C. § 1201(a) (Count Three); Hobbs Act extortion conspiracy, in violation of 18 U.S.C. § 1951 (Count Four); Hobbs Act extortion, in violation of 18 U.S.C. § 1951 (Count Five); threatening physical violence in furtherance of a plan to commit extortion, in violation of 18 U.S.C. § 1951 (Count Six); using, carrying, and possessing a firearm during and in relation to the crime charged in Count Six, in violation of 18 U.S.C. § 924(c) (Count Seven); possessing a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g) (Count Eight);[1] and conspiracy to commit witness tampering, in violation of 18 U.S.C. § 1512(k) (Count Nine). The government respectfully makes the following motions: (1) to preclude cross examination by the defendant of certain NYPD officers whom the government may call as witnesses concerning civil lawsuits naming those officers as defendants, but that did not result in any adverse findings or judgments against them; (2) to permit the government to cross examine the defendant about his prior felony conviction for honest services wire fraud conspiracy and false statements to the U.S. Pretrial Services Department during the course of that case, in the event the defendant elects to testify; and (3) to permit the government to elicit testimony

---

[1]     Per the Court's orders dated December 9, 2019 and June 3, 2021, Count Eight has been severed from the trial to be held on June 21, 2021 and will be tried at a later date.

regarding the defendant's plan to bribe other potential witnesses and to manufacture fake Uzbekistan driver's licenses.

I.      Background

      This case arose from the kidnapping of an individual ("John Doe") by Narzikulov and co-defendants Sherzod Mukumov and Co-Conspirator #3[2] on March 28, 2019. As described in the criminal complaint filed in this matter (Dkt. 14), Narzikulov and other co-conspirators assisted applicants for commercial driver licenses ("CDLs") in cheating on tests administered by the DMV in exchange for cash (the "CDL Scheme"). The CDL Scheme involved the use of wireless communication devices, hidden within the clothing worn by the fraudulent applicants, which Narzikulov's co-conspirators used to communicate correct answers to the applicants as they took the written tests at the DMV locations. (Dkt. 14 at 4-5).

      John Doe was involved in the CDL Scheme for only a brief time, during which he picked up cash from driver license applicants and delivered it to Narzikulov. (Id.). John Doe also assisted test takers in concealing electronic equipment to facilitate their cheating on DMV tests. (Id.). After John Doe stopped participating in the CDL Scheme, he left New York City for several months before returning to Brooklyn. (Id. at 5). Upon his return, he was kidnapped at his residence by Narzikulov, Mukumov and Co-Conspirator #3. (Id.). According to John Doe, the motive for the kidnapping was the collection of a debt that Narzikulov claimed John Doe owed for having unexpectedly exited the CDL Scheme. (Id.). Video of the kidnapping showed John Doe being subdued by use of a taser and subsequently dragged to a waiting car by Narzikulov and Co-Conspirator #3. (Id. at 8).

      Narzikulov and Mukumov were arrested on the criminal complaint on April 18, 2019. On the same day, federal agents executed a search warrant at Narzikulov's apartment. (Dkt. 15 at 1). During the search, agents seized a number of items constituting evidence of the CDL Scheme, including numerous identification documents in the names of other individuals; ledgers; electronic equipment, including smart phones and earpiece receivers; and DMV manuals, application materials, and other records related to the DMV's commercial driver license testing administration. (Id. at 2). The agents also seized and subsequently examined a number of electronic devices from the apartment. In addition, the agents recovered a firearm and ammunition, and more than $290,000 in cash. (Id.).

      Narzikulov, Mukumov and Co-Conspirator #3 were charged in an indictment that was returned on May 13, 2019. (Dkt. 23). That indictment contained four counts: conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c); kidnapping, in

---

[2]    Co-Conspirator #3 remains at large and is therefore not named in this submission.

violation of 18 U.S.C. § 1201(a)(1); conspiracy to commit Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a); and Hobbs Act extortion, in violation of 18 U.S.C. § 1951(a).

On November 5, 2019, a grand jury returned the S-1 Indictment charging Narzikulov, Mukumov, Co-Conspirator #3 and another individual named Jasur Kamolov with one count of conspiracy to produce false identification documents, in violation of 18 U.S.C. §§ 1028(b)(2)(A) and 1028(f), based on their collective participation in the CDL Scheme.[3]  (Dkt. 48).  The S-1 Indictment also included the same kidnapping conspiracy, kidnapping, extortion conspiracy, and extortion charges against Narzikulov, Mukumov, and Co-Conspirator #3.[4]  (Id.).

On January 27, 2020, a grand jury returned the S-2 Indictment against Narzikulov, Co-Conspirator #3 and two additional co-defendants, Firuz Juraev and Murodjon Sultanov.  (Dkt. 82).  The S-2 Indictment, which contained eleven counts in total, charged Narzikulov with the same crimes as the S-1 Indictment (Dkt. 82 at 9-12), but as to Count One (conspiracy to produce false identification documents), the S-2 Indictment also included allegations related to licenses issued by the Taxi and Limousine Commission of New York City.  (Id. at 5, 9).

Counts Six and Seven of the S-2 Indictment contained new charges against Narzikulov and Co-Conspirator #3.  Specifically, Count Six alleged that Narzikulov and Co-Conspirator #3 threatened violence to Co-Conspirator #1 in furtherance of a plan to commit extortion, in violation of 18 U.S.C. § 1951(a).  (Id. at 12-13).  Count Seven alleged that Narzikulov and Co-Conspirator #3 possessed and brandished a firearm during and in relation to that crime, in violation of 18 U.S.C. § 924(c).  (Id. at 13).  These charges were based on evidence that on the night of March 28, 2019 (the same day as John Doe's kidnapping), Narzikulov used a firearm to threaten the individual identified in the S-2 Indictment as Co-Conspirator #1 in an attempt to extort money from Co-Conspirator #1 and John Doe.  Specifically, evidence showed that Narzikulov threatened Co-Conspirator #1 because Co-Conspirator #1 had thwarted Narzikulov's attempt to collect money from John Doe.

Counts Nine, Ten, and Eleven of the S-2 Indictment contained new charges of witness tampering that arose out of a scheme orchestrated by Narzikulov (while incarcerated) to offer money to key witnesses against him to travel overseas and remain there until after

---

[3] On January 8, 2020, Kamolov pleaded guilty to conspiracy to produce false identification documents, in violation of 18 U.S.C. §§ 1028(b)(2)(A) and 1028(f).  (Dkt. 72).

[4] On November 26, 2019, Mukumov pleaded guilty to conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c).  (Dkt. 62).

any trial against him had concluded. Narzikulov was named as a defendant only in Count Nine, charging conspiracy to commit witness tampering.[5]

II.  Motions

    A.  Motion to Preclude Cross Examination of NYPD Officer Witnesses Regarding Civil Litigation

At trial, the government may call as witnesses NYPD Detectives Anthony Manetta and Sammy Sosa.

In 2016, Detective Anthony Manetta was named as a defendant in civil lawsuit filed in New York State Supreme Court for Kings County – Duran v. City of New York, et al., Index No. 510391/2016. The plaintiff alleged that Detective Manetta had violated his civil rights during the allegedly unlawful execution of a search warrant at a residence in Brooklyn, New York and subsequent (allegedly false) arrest of the plaintiff on narcotics charges. The publicly available docket for the case reflects that the parties entered into a stipulation of discontinuance with prejudice in 2018 with no findings of liability against Detective Manetta.

In 2013, Detective Sammy Sosa was named as a defendant in one civil lawsuit filed in New York State Supreme Court for Kings County and two civil lawsuits filed in U.S. District Court for the Eastern District of New York. The government understands that the civil lawsuit in New York Supreme Court – Drach v. City of New York, et al., Index No. 007048/2013 – was settled without any findings or admissions of liability against Detective Sosa. The dockets for the two civil lawsuits filed in federal court - Davidson v. City of New York, et al., 11-CV-5383 (FB) (E.D.N.Y.) and Kovziridze v. City of New York, et al., 13-CV-3764 (SLT) (E.D.N.Y.) – reflect that both involved section 1983 claims based on allegedly false arrests of the respective plaintiffs. The dockets in both cases indicate that they were each resolved by settlement without any findings against, or admissions of liability by, Detective Sosa.

The Court should preclude any cross examination of Detectives Manetta and Sosa based on the unproven allegations in the lawsuits described above. It is well-settled that unsubstantiated allegations against a witness are not probative of the witness's character for truthfulness. See, e.g., United States v. Dekattu, No. 18-CR-474 (ARR), 2019 WL 885620, at *1 (E.D.N.Y. Feb. 22, 2019) (precluding cross-examination of police officer about allegations in civil lawsuit where lawsuit did not include any findings of fact or credibility);

---

[5]  On November 30, 2020, Sultanov pleaded guilty to witness tampering, in violation of 18 U.S.C. § 1512(b). (Dkt. 190). On May 24, 2021, Juraev pleaded guilty to conspiracy to commit Hobbs Act extortion, in violation of 18 U.S.C. § 1951 and conspiracy to commit witness tampering, in violation of 18 U.S.C. § 1512(k). (Dkt. 229).

United States v. Ahmed, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016) (granting the government's motion in limine to preclude cross-examination of physician witnesses regarding prior medical malpractice actions that did not result in any adverse findings against them because "[t]he Court does not consider the existence of a complaint containing unproven allegations or a settlement agreement lacking any adverse findings probative of the witness' truthfulness."); Saldarriaga v. United States, No. 99-CV-4487 (WK), 2002 WL 449651, at *4 (S.D.N.Y. Mar. 21, 2002) ("Unsubstantiated civil rights allegations made against [a detective] . . . have no bearing on his character for truthfulness"); United States v. Morrison, 98 F.3d 619, 628 (D.C. Cir. 1996) (holding that district court did not abuse its discretion in sustaining an objection to line of questioning concerning civil complaint filed against witness on grounds that "the mere filing of a complaint is not probative of truthfulness or untruthfulness, regardless of whether the allegations in the complaint, if true, would seriously undermine the witness' credibility"). Accordingly, the Court should not allow the witnesses to be cross-examined based on the unsubstantiated claims made by the plaintiffs in these lawsuits.

      B.      <u>Motion to Permit the Government to Cross Examine the Defendant Regarding His Prior Felony Conviction and Bond Revocation, If the Defendant Elects to Testify</u>

As discussed in the government's April 22, 2021 motion to admit evidence regarding the defendant's prior conviction pursuant to Rule 404(b) (Dkt. 219), the defendant pleaded guilty to honest services mail fraud conspiracy, in violation of 18 U.S.C. § 1349, on February 2, 2015. See United States v. Narzikulov, et al., 13-CR-601 (RJD) (E.D.N.Y.), Dkt. 148. The government's motion noted that, in connection with that plea, the defendant admitted under oath in sum and substance that: (1) he took money from people to help them obtain driver licenses; (2) he provided test answers to applicants who could not pass the test to obtain licenses on their own; (3) he knew that security guards with the New York State Department of Motor Vehicles were receiving gratuities to allow the cheating to occur; (4) he worked with others to perpetuate the scheme; and (5) the cheating occurred at locations in Manhattan and Queens. (Dkt. 219, at 6).

The Court has ruled that the government will not be permitted to admit evidence of the defendant's prior conviction pursuant to Rule 404(b), but the government respectfully submits that it should be able to cross examine the defendant concerning the conviction, if the defendant elects to testify at the trial. Federal Rule of Evidence 609 provides in relevant part that "evidence of a criminal conviction . . . for any crime regardless of the punishment <u>must be admitted</u> if the court can readily determine that establishing the elements of the crime required proving – or the defendant's admitting – a dishonest act or a false statement." See Fed. R. Evid. 609(a)(2) (emphasis added). As noted above, the defendant pleaded guilty to honest services mail fraud conspiracy and, as part of that plea, admitted to helping applicants for driver licenses cheat on the relevant exams. As such, the defendant's conviction is one that involves, at a minimum, a "dishonest act." See United States v. Mesbahuddin, No. 10-CR-726 (NGG) (JO), 2011 WL 3841385, at *2 (E.D.N.Y.

5

Aug. 26, 2011) (permitting government to cross examine defendant about prior conviction for attempted bank fraud under Rule 609(a)(2)); see also United States v. Bumagin, 136 F. Supp. 3d 361, 375-77 (E.D.N.Y. 2015) (permitting government to cross examine defendant concerning prior convictions for conspiracy to possess and pass a counterfeit check and attempt to pass a fictitious obligation pursuant to Rule 609(a)(2)). Accordingly, the government should be permitted to cross examine the defendant regarding the "statutory name of [the] offense, the date of conviction, and the sentence imposed . . . ." Bumagin, 136 F.3d at 376; see also Mesbahuddin, 2011 WL 3841385, at *2. In addition, the government should be able to cross examine the defendant about the underlying facts of the prior conviction if the defendant testifies in a way that is inconsistent with his criminal history. See Mesbahuddin, 2011 WL 3841385, at *2 (permitting the government to cross examine the defendant about the facts underlying his prior conviction if the defendant contradicted those facts in his testimony); see also United States v. White, 312 F. Supp. 3d 355, 364 (E.D.N.Y. 2018) ("[T]o the extent Defendant testifies in a manner that contradicts the facts of his previous convictions and thereby 'opens the door,' the Government is permitted to cross-examine Defendant regarding those facts.").

If the defendant elects to testify, the government should also be permitted to inquire as to the defendant's false statements to the Pretrial Services Department ("Pretrial Services") following his arrest in his prior case. As discussed in the government's April 18, 2019 detention memorandum, the defendant was originally arrested in that case on September 25, 2013. (13-CR-601, Dkt. 9). On October 21, 2013, the defendant was released from pretrial custody with certain conditions of release, including that the defendant be placed on home detention with electronic monitoring. (Id., at Dkt. 56, 57). On October 24, 2013, the defendant was remanded back into pretrial custody, upon a finding that he had cut the strap holding the electronic monitor. (Id., at Dkt. 78). At the October 24, 2013 revocation hearing, the defendant's Pretrial Services officer advised the Court that the defendant had claimed that the monitoring device had broken, even thought it was obvious that the strap had been cut. (Id.). The magistrate judge's decision to remand the defendant was subsequently upheld by both Judges Mauskopf and Dearie. (Id. at Dkt 93).

Federal Rule of Evidence 608(b) generally prohibits the use of extrinsic evidence (apart from prior criminal convictions) to prove specific instances of a witness's conduct to attack or support the witness's character for truthfulness. The rule does, however, permit cross examination about specific instances of a witness's conduct, if those instances are probative of the character of the witness for truthfulness or untruthfulness. Here, the government should be permitted to cross examine the defendant (if he testifies) regarding his lie to Pretrial Services that the bracelet securing his electronic monitor had broken. In particular, the government should be permitted to inquire as to the defendant's initial release from pretrial custody, his subsequent false statements to Pretrial Services regarding the breaking of the bracelet, and the consequences of those false statements: his remand back into pretrial custody.

C. Motion to Admit Testimony Regarding the Defendant's Statements Concerning Plan to Pay Bribes to Other Witnesses and the Manufacture of Fake Uzbekistan Driver's Licenses

The government plans to call a cooperating witness (the "CW") at trial, who, the government anticipates, will testify that the defendant arranged for the defendant's father to provide a copy of the surveillance video showing the kidnaping of John Doe to the CW. The government expects that the CW will testify that the defendant instructed the CW to assist the defendant's father in viewing the video so that the defendant's father and another co-conspirator could identify additional potential witnesses to the kidnaping (i.e., passersby who happened to be present when the kidnaping occurred). The government anticipates that the CW will testify that the purpose for identifying these potential additional witnesses – as communicated to the CW by the defendant – was so that the defendant's father and another co-conspirator could approach the witnesses with offers of money in exchange for a pledge by the witnesses not to testify regarding the kidnaping.

These statements by the defendant to the CW are admissible as direct evidence of the defendant's intent with respect to Count Nine (Conspiracy to Commit Witness Tampering), as well as direct evidence of Counts Two and Three (Conspiracy to Commit Kidnaping and Kidnaping), in that the defendant's actions and statements confirm his participation in the kidnaping plot. Alternatively, they are admissible as uncharged other bad acts pursuant to Federal Rule of Evidence 404(b). The statements clearly demonstrate the defendant's plan and intention – should he raise these issues at trial – to obstruct the progress of the case against him by offering bribes to potential witnesses, which is the core objective of the conspiracy with which he is charged in Count Nine. In addition, the evidence is not unduly prejudicial in that it is no more outrageous or inflammatory than the conduct with which the defendant is explicitly charged.

The government further expects that the CW will testify that the defendant offered money to the CW if the CW were to manufacture fake driver licenses that would appear to be issued in Uzbekistan. The government expects the CW will testify that the CW declined the defendant's offer. The evidence is relevant to the charge in Count One – conspiracy to unlawfully produce identification documents – in that the government anticipates the CW will testify that Uzbekistan driver's licenses can be used (1) to facilitate the obtaining of driver licenses in New Jersey (and possibly other states), and (2) to reduce car insurance payments (because the fake Uzbekistan licenses, if backdated, can be cited to document a longer period of driving experience). As such, the evidence is direct evidence of the defendant's participation in the charged conspiracy to unlawfully produce identification documents. The evidence is also admissible pursuant to Federal Rule of Evidence 404(b) since it shows the defendant's plan to assist individuals in fraudulently obtaining driver licenses in exchange for payment. The evidence is further admissible since it tends to show the defendant's willingness to discuss criminal undertakings with the CW and therefore serves to establish the nature of their relationship and the credibility of the CW.

Conclusion

        For the reasons stated above, the government respectfully requests that the Court grant these motions in limine.  As the government continues to prepare for trial, it may seek leave to file additional motions in limine, if any additional issues arise.  The government will promptly advise the Court and the defendant of any additional motions it intends to seek leave to file.

                                                Respectfully submitted,

                                                MARK J. LESKO
                                                Acting United States Attorney

By:   /s/
        Virginia T. Nguyen
           Special Assistant U.S. Attorney
        F. Turner Buford
           Assistant U.S. Attorney
        (718) 254-7000

cc:    Peter Guadagnino, Esq. (by Email and ECF)